SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GREGORY F. HURLEY, Cal. Bar No. 126791
ghurley@sheppardmullin.com
MICHAEL J. CHILLEEN, Cal. Bar No. 210704
mchilleen@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:  714.513.5100
Facsimile:   714.513.5130

Attorneys for Defendants COUNTY OF
LOS ANGELES, COUNTY OF LOS
ANGELES BOARD OF
SUPERVISORS, and LOS ANGELES
COUNTY DEPARTMENT OF PUBLIC
SOCIAL SERVICES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Housing Works, Los Angeles Catholic Worker, Independent Living Center of Southern California, Inc., and Timothy Laraway,<br><br>               Plaintiffs,<br><br>        v.<br><br>County of Los Angeles, County of Los Angeles Board of Supervisors, and Los Angeles County Department of Public Social Services,<br><br>               Defendants. | Case No. 2:15-CV-08982-GW(RAOx)<br><br>Honorable George H. Wu<br><br>**DECLARATION OF GERALD G. KNAPTON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES; EXHIBITS 1 TO 12**<br><br>**Hearing:**<br>Date:    July 12, 2018<br>Time:    8:30 a.m.<br>Place:   Courtroom 9D<br><br>Action Filed:  11/18/15<br>Discovery Cut-off: 10/26/2017 |

# **Table of Contents**

I.      BACKGROUND AND QUALIFICATIONS OF EXPERT ............................................. 1

II.     FEE REQUEST AND SUMMARY OF OPINION.......................................................... 3

III.    BACKGROUND ............................................................................................................. 5

    A.      The County Began Making Changes to its GR program in 2009 ........................... 6

    B.      Settlement Meetings Were the Predominant Task ................................................. 7

    C.      The Concerns Raised............................................................................................. 7

    D.      Pre-Litigation Notice:........................................................................................... 8

    E.      Settlement attempts and lawsuit:......................................................................... 10

IV.     OUR COMPUTER REPORTS .................................................................................... 14

V.      COURT AND CODE GUIDANCE ON FEE SHIFTING............................................. 22

    A.      Hourly Rates for Reasonable Time ..................................................................... 25

VI.     HOURLY RATE ANALYSIS ...................................................................................... 25

    A.      Real Rate Report:................................................................................................ 26

    B.      Effect of rate adjustment on ALL time submitted .............................................. 29

VII.    THE EXCEL COMPUTER REPORTS........................................................................ 30

    A.      The Requested Totals Do Not Match the Plaintiffs' Exhibits.............................. 30

    B.      Time and Fees by Phases .................................................................................... 31

    C.      Adjustments to the Requested Fees ..................................................................... 31

VIII.   RECAPITULATION OR SUMMARY OF ANALYSIS OF FEES............................... 34

IX.     CONCLUSION ............................................................................................................ 35

    A.      Fees: .................................................................................................................... 35

    B.      Costs:................................................................................................................... 35

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

### DECLARATION OF GERALD G. KNAPTON

1.      I, Gerald G. Knapton, make this declaration in support of the Opposition by Defendants to Plaintiffs' Motion for Attorney Fees (the "Fee Motion") in Case No. 2:15-cv-08982-GW (RAOx).

2.      I am making this Declaration as an expert witness, based on matters (including my specialized knowledge, skill, experience, training and education) perceived by, or personally known to me, or made known to me that is of a type that may reasonably be relied upon by an expert in forming an opinion upon the subject to which my testimony relates.

## I.      BACKGROUND AND QUALIFICATIONS OF EXPERT

3.      My background, qualifications as an expert, and experience is more fully set forth in **Exhibit 1** attached to this Declaration.  I was educated at Brown University, U.C. Berkeley, and the School of Law at U.C.L.A.  I am an attorney at law licensed to practice in the State of California since 1977, and I am admitted to all federal courts within California and the Court of Appeals for the Ninth and Third Circuits.  I am a partner/shareholder of the law firm Ropers, Majeski, Kohn & Bentley, which has offices in Los Angeles, San Francisco, Redwood City, San Jose, Seattle, Las Vegas, New York City, Boston and Paris.  I have been at Ropers Majeski since July 2002, and most of my time is spent as an expert for legal billing and ethical issues.

4.      I have personally reviewed over $4.5 billion dollars in legal fees and work product.  I have reviewed hourly legal bills for professional services and supporting work product in many motions, arbitrations, appeals and trials.  I have also reviewed hourly legal bills and supporting work product in "catalyst theory" matters, disability claims  involving individual, class action or representative claims by current or former patients or applicants for benefits arising from agreements or the requirements of state and federal statutes as well as from employment

agreements, arbitration agreements, employment retaliation claims, wage and labor matters, individual and class actions in statutory-interpretation matters, FEHA matters, discrimination, failure to accommodate claims, PAGA claims, FMLA claims, accounting cases, CFRA matters, "civil rights" cases, retail credit compliance litigation, truth in lending lawsuits, discrimination lawsuits, FSLA lawsuits, ADA claims, CCP section 1021.5 claims, and individual actions for a great variety of clients who have questions about the legal fees charged by their own lawyers or by counsel for "the other side" under a fee-shifting mechanism of some sort.

5.     My past experience as an expert includes reviewing the bills and work product for requests for attorney fees, including many for matters based in the Los Angeles and the Orange County area.  I have reviewed hundreds of motions to shift fees for cases in arbitrated matters as well as in both trial and appellate courts. Many of these motions were by public interest law firms and large law firms who take the matter on a "pro bono" basis.  Many are based on contractual "attorney's fee provisions," codes, or statutes such as Code of Civil Procedure section 1021.5 and many were based on the "catalyst theory."  I have also reviewed fees to determine the reasonableness of such fees, including those to be submitted as part of a settlement or as part of a motion to shift fees.  I have reviewed work product and actual legal bills for law firms, corporations, partnerships, insurance companies, the State of California, cities, counties, trustees, colleges, universities, schools and individuals for legal work in trial courts, arbitrations and for appellate work.

6.     I have also written and lectured on the issue of reasonableness and allocation of legal fees.  I have been qualified and have testified in person as an expert witness on attorney fees on approximately 57 occasions—including before arbitrators, judges and juries in trials and in arbitrations.  The list of those matters is provided in **Exhibit 2**.

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

7.    Several of our firm's experienced paralegals, Keiko Kakiuchi, Marc Bielec and others, assisted me with creating the spreadsheets and exhibits that are attached to this declaration.  When I use the words "we" or "our" in this declaration I mean me and those paralegals, not the County or its counsel.  Our work is billed by our law firm based on the time the tasks take.  We are not compensated in any other manner.  Approximately half of my assignments are for a party opposing a request for fees and about half is for a party that is seeking fees.

8.    My assignment was to review the motion and supporting declarations and exhibits as well as the Court's order on entitlement to fees and other files and offer my expert opinion on the issues the Court raised in the Order and support that opinion on the reasonable and necessary legal fees by a declaration and exhibits that would be helpful to the Court.

## II.    FEE REQUEST AND SUMMARY OF OPINION

9.    Plaintiffs present charts in their exhibits showing 6,836.8 hours of time by twenty-one timekeepers from five law firms comprising fees of $4,911,983.50 (which is an average hourly rate of $718.46) - less voluntary discounts of 5% to $4,66,384.30 - less another voluntary reduction of 15% from that balance to reach a fees lodestar of $3,966,426.65 before any enhancement.  They also seek costs of $82,020.13.

10.    This was always a "settlement case" where the County had already begun making changes to the General Relief programs starting in 2009 (and continuing up to 2017).  The primary barrier to a pre-litigation resolution appears to have been Plaintiffs' counsel's overreaching with a demand for screening for all GR applicants for mental disabilities.  Plaintiffs' counsel (but not Plaintiffs themselves) participated in discussions concerning potential changes starting in late 2014.  Plaintiffs' counsel's key demand, which was announced to the public in a pre-litigation "white paper" distributed to the media in October 2015 (**Exhibit 3** -

the "White Paper"), a demand that the County has never agreed to, called for universal mental disability screening of all GR applicants using a so-called "validated screening tool," (See **Exhibit 3**, p.11 "THE WAY FORWARD").

11.   Plaintiffs did not succeed in their efforts to get a mandatory preliminary injunction nor did they succeed on any of their claims under federal law.  Indeed, there was never any finding that the Defendants were ever in violation of any applicable law concerning the accommodation of persons with mental disabilities.

12.   It is my professional opinion that the amount of fees that Plaintiffs seek to recover in this action should be discounted significantly from the amount requested in Plaintiffs' moving papers because the number of attorneys' staffed on this matter, the amount of time billed, and rates "charged" were all unreasonably high.

13.   The number of Plaintiffs' firms (5) and the number of attorneys (21) working for Plaintiffs specifically struck me as a problem.  It appears that the Court also seemed surprised by this.  At the February 11, 2016 scheduling conference the Court remarked "There are so many plaintiff's counsel." (Transcript, page 3, line 16).  The County's one law firm staffed the case with four attorneys (plus one for about 100 hours).  Plaintiffs' lawyers had **162 meetings** with as many as 11 lawyers at a meeting for a total of 1,998.65 hours of time just for the meetings.  They also recorded 534.0 hours for travel time to and from the meetings. "Reviewing each other's work comprise 2,446.9 hours of time. Their emails comprise part of another 1,301.6 hours. A schematic overview of the 21 timekeepers is shown in **Exhibit 8**.

14.   The requested rates for Plaintiffs' counsel are far in excess of the *non-contingent*[1] rates that are actually paid for similar litigation in Los Angeles.

15.   In **Exhibit 4**, we applied the actual paid hourly rates for all the

---

[1]   Ketchum v. Moses, 24 Cal.4[th] 1122, 1133 (2001)

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

requested time listed in the charts by all the timekeepers that is a fee of $2,818,513.20 and if one applies the Plaintiffs' suggested "chain" discounts of 5% ($140,925.16) and 15% ($401,636.71) the balance is $2,275,941.33 before any further adjustment for pre-litigation efforts, excessive meeting time, overstaffing, training time, duplication, wasteful discovery, excess hours, poor descriptions of work performed, unsuccessful tasks time and allocation for federal claims.

16. Once those further adjustments are made the balance of possible fees is $1,141,728.49 as will be explained and supported in this declaration and the 12 exhibits.

17. The requested $79,192.02 in costs includes CALR charges of $25,789.11 for Lexis or Westlaw which is an overhead item for most firms, paid on an annual flat amount basis, not on the pro-forma per use basis submitted.

18. They also list $20,081.46 for data hosting charges by Epiq and these is both high and not well explained for these charges, given the relatively small amount of data.

19. Three of the other firms list modest costs for travel related expenses of $2,491.11 for DLRC; Western Cent for $262.64; LAFLA for $74.36. Reasonable costs are $36,149.56 for all.

## III.   <u>BACKGROUND</u>

20. Based on the allegations of the operative Complaint, Housing Works provides services to Los Angeles County homeless persons, including some who are mentally ill and in need of County benefits. Independent Living Center of California, Inc. provides services to individuals with disabilities including those with mental and/or developmental disabilities. These two nonprofits are together referred to as "ILC" in this declaration.

21. An important point to keep in mind is that "There were no regulations or published opinions directly on point governing access of persons with mental

and intellectual disabilities to governmental programs such as General Relief…" (Plaintiffs' Motion for Attorneys' Fees in an Amount Specified at page 6, lines 17 to 19).

22.     A second major point, as ILC has explained, is that it is not always possible to tell if a GR applicant has mental and intellectual disabilities, and even if they are identified as needing special assistance, it is often still difficult to identify and provide the kind of case-by-case accommodations that these individuals need. Plaintiffs assert that the County processes about 240,000 applications for General Relief per year **Exhibit 3**, page 2).

23.     ILC claimed that the regulators charged with advising entities like the Defendants concerning their obligations to accommodate persons with mental disabilities failed to do so.  Accordingly, it was left to the County to try to determine what accommodations were necessary to comply with the law (Newman declaration, ¶ 7).

24.     As with any other public entity, changes often take many years and this requires the right combination of funding and logistical feasibility to come to fruition along with revising or changing the rules and forms for how General Relief is administered for a sometimes hard-to-ascertain sub-class of applicants is difficult at best.

A.      **The County Began Making Changes to its GR program in 2009**

25.     Starting in 2009 the County had already begun a redesign of its GR processes according to the then-head of the DPSS GR division (Diggs February 22, 2018 declaration, pages 2 to 5, **Exhibit 5**). By 2010 it had received Board of Supervisors approval of a comprehensive plan to restructure the GR program (including a more extensive mental health disability assessment, identifying and treating GR applicants and participants with mental disabilities) and in 2013 DPSS retained a consultant to develop a strategy to improve conditions in the district

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

offices.

26.    According to the acting-chief of DPSS this resulted in the development of the services delivery model called the "Model Office Concept" (MOC) and revised in-office procedures, a restructuring to make the offices less chaotic was rolled out on a rolling office-by-office basis starting in June of 2015 and completed in June of 2016.  The MOC redesigned the mental health triage process by which GR applicants/participants are assessed for mental health disabilities that may render them "unemployable" and therefore exempt from certain GR requirements and to speed the process along (Jimenez declaration of July 5, 2016, pages 2 to 4 **Exhibit 6**).  The MOC was demonstrated to Ms. Arias, Mr. Newman and Ms. Rivera (counsel for Plaintiffs) on June 10, 2015 at the Rancho Park District office of DPSS (**Exhibit 7**, lines 1550 to 1553).

### B.    Settlement Meetings Were the Predominant Task

27.    There were ten settlement meetings before suit was filed, four mediation sessions (plus three follow-up calls) and five direct settlement sessions once the lawsuit began.  The various settlement efforts and positions are explained below as they are relevant to what a reasonable fee should be[2].  The County had already begun making changes and it continued to make changes and those changes satisfied the Plaintiffs – who moved to dismiss their claims on October 13, 2017.

### C.    The Concerns Raised

28.    ILC raised complaints based in part on the ADA (and similar federal and state statutes[3]), against what it viewed as the discriminatory manner in the ways

---

[2]    "We agree with the reasoning of the Third Circuit and therefore hold that the district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award in this case."  *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011).  See also *Lohman v. Duryea Borough*, 574 F.3d 163, 168 (3d Cir. 2009)("[P]ermitting settlement negotiations to be considered would encourage reasonable and realistic settlement negotiations. In addition, there has been no argument made that [plaintiffs' settlement demands are] anything other than an indication of what the plaintiff is seeking. It comports with established law to consider what was sought as compared to what was awarded.").

[3]    Section 504 of the Rehabilitation Act of 1973 and California Government Code section 11135.

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

that Los Angeles County Department of Public Social Services ("DPSS") administrated the County of Los Angeles General Relief program ("GR"), specifically as to how it administers the GR and provides (or denies) benefits to indigent county residents.  Eligibility for the GR program is limited to indigent residents who have $50 or less in cash or in a bank account, and whose income is less than $221 per month and these criteria need to be proven.

29.    As reflected in **Exhibit 3**, the October 2015 White Paper, Plaintiffs' key demand was the imposition of universal mental health screening on all GR applicants, but this universal screening was never agreed to by the County and Plaintiffs did not prevail on this claim.[4]

30.    The County's requirement to make application for benefits in person was an important aspect of the Plaintiffs' concerns.  The DPSS position was that it did have a "mail in" option for applications (albeit one that was not well-known or used) and that it did have established policies and procedures to assist mentally disabled individuals with the in person process.  The policy requires that individuals who appear to be mentally disabled are assisted through the application process on a priority basis.  When identified, the mentally disabled individual is seen by the appropriate worker and provided services before others who may be waiting to see that same worker.  When apparently mentally disabled persons are observed in the reception area, the security officer or receptionist alerts the customer service representative or reception supervisor to ensure they are seen by the appropriate worker and receive priority handling. (Docket No. 56-1 at page 10).

D.    **Pre-Litigation Notice:**

31.    Prior to filing this lawsuit, Western Center on Law & Poverty's

---

[4]    Plaintiffs' other demands in the White Paper are generic and non-specific; demands for increased staffing and to "desist from failing to accommodate those who ae [sic] known to have mental disabilities simply because their 'Temporary' status has expired."  These indefinite demands further underscore the fact that there is no regulatory guidance identifying what regulated entities are required to do to accommodate persons with mental disabilities.

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

Ms. Menjivar and Mr. Newman wrote to the County Board of Supervisors ("Board") on September 3, 2014 asserting their view that the GR program was not being administered in accord with the ADA, Section 504 of the Rehabilitation Act, CA Gov't Code section 11135 and CA Welfare & Institutions Code sections 1000 and 10500.

32.    Western Center's list of concerns were grouped into three types:

1.    **GR application barriers.**  The GR application process was so time-consuming that it imposed unreasonable barriers to individuals with mental and developmental disabilities denying them access to GR. (long lines, delays, chaotic environment, travel to other County GR offices).  Need to meet with a qualified County mental health assessment person in lieu of a verification from a qualified professional who knows the applicant.

2.    **Defective screening.**  DPSS employees who have contact with applicants are not adequately trained and do not identify those who need special assistance (NSA) and are not referred for a mental health assessment. Some are incorrectly identified a "employable" and those must participate in the General Relief Opportunities to Work (GROW) (which adds 80 hours per month of GROW activities – which acts as an insurmountable barrier resulting in the denial of GR benefits and termination of the GR program as to them.

3.    **Modification of DPSS policies.**  Applications in writing, email or telephone in advance of in-person visit not allowed. In-person modifications not allowed.  No on-line or by-mail submissions in advance of visits allowed. The NSA process is difficult and the arbitrary designation of an applicant as "Temporary NSA" requires verification of disability to maintain NSA status.

33.    Plaintiffs' lawsuit alleges that DPSS's failure to provide GR benefits to qualified individuals with mental disabilities has diverted time and resources to providing subsistence level assistance to those individuals, which frustrates their organizational goals.  For example, Plaintiffs claim that they had to assign staff to personally assist clients through the GR application process, thus diverting

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

Plaintiffs' resources for entire days at a time. Assisting mentally-disabled persons apply for GR benefits and comply with GR program requirements requires Housing Works case managers to personally accompany applicants to the DPSS office because "it is impossible for them to complete the GR process without help." (Decl. of Anthony Rubin ¶¶9-10, Docket No. 40-5).

### E.    Settlement attempts and lawsuit:

34.    Discussions and meetings among the Defendants and Plaintiffs' counsel followed for over one year but without resolving the matter.  As reflected in the White Paper, Plaintiffs' counsel's key demand was the imposition of universal mental health screening on all GR applicants.  Although this item was never agreed to by the County the lawsuit was eventually dismissed because the Plaintiffs were apparently satisfied that the other changes, some of which had been in process since 2009, were sufficient.

35.    This lawsuit was filed on November 18, 2015, styled on the PACER docket as a "42:12101 American With Disabilities Act" cause.

36.    There was one deposition taken (LaShonda Diggs) on June 16, 2016 and one (Charles Palmer) on June 23, 2016.

37.    On June 9, 2016 a preliminary, mandatory injunction was sought by plaintiffs (ECF 40) and defendants filed a motion for partial summary adjudication on June 13, 2016 (ECF 42).  Although the Court's tentative was to deny both motions, the Court heard argument on August 4, 2016 and encouraged the parties to restart discussions to reach a settlement.

38.    There was a stay on discovery from August 30, 2016  to June 30, 2017.

39.    DPSS revised the existing GR application mail-in procedures and adopted an "e-Application" process in May of 2017:

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

Effective 05/21/17, applicants for GR benefits may apply online using the YBN online application system. Applications submitted online Monday through Friday during the business day will be received for processing on the same day. Applications submitted on holidays or weekends, will be received on the next business day. Applications will be assigned to the district of residence based on the address or zip code provided by the applicant or by the GR office selected by the applicant.

40.    DPSS also revised the GR application mail-in procedures, effective August 18, 2016. The on-line process and County forms were revised on June 26, 2017.

41.    Four more depositions were taken (Alcazar, English, Tanner and Jimenez) in the fall of 2016.

42.    After eight months of further discussions and four sessions of mediation assisted by Hon. Edward Infante (Ret.) - and after some long-planned procedural changes were implemented by DPSS - the parties agreed on possible terms for a settlement, subject to approval by the Board of Supervisors. On June 6, 2017 the proposed settlement was rejected by the Board of Supervisors.

43.    In response to the Plaintiffs and the Court's inquiry for the reasons for the rejection Defendants assured the Court that the Board was fully briefed on this significant case, that the Board's reasons for rejecting the proposed settlement are fundamental issues that cannot be overcome via further settlement negotiations, and that any further discussion on the matter would not be productive.  (Docket 107, pages 3-4.).

44.    The discovery listed by Plaintiffs on page 7 of their motion includes 156 document requests by Plaintiffs, 12,139 pages of documents by Plaintiffs and 87,829 pages of documents by County.  This discovery was not used and was wasteful and unnecessary. The total running time for all the depositions was 61.16 hours. The $20,081.46 for data hosting services is very high for this limited amount of documents. Motions to compel discovery were filed by both sides and the Court

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

ordered each to furnish further information within 10 days (Docket 127, filed 12/04/2017).

45.     Plaintiffs determined that the DPSS operational changes made continuation of the present lawsuit unnecessary and filed a request for voluntary dismissal of the matter on October 13, 2017 (Docket ECF 111).  Defendants opposed this and argued that the dismissal should be one with prejudice and that attorney's fees should not be awarded (ECF 114).  The voluntary dismissal was granted on November 13, 2017 by the Court, but it reserved the issue of attorney's fees.

46.     Nine more depositions (on the issue of "standing") were taken from September to December of 2017. The time for them is part of the 61.16 hours total time for all depositions.

47.     The motion for <u>entitlement</u> to fees was filed on January 25, 2018 (ECF 131).  The Court considered the standing issue, the "catalyst theory" doctrine and its interaction with California Code of Civil Procedure section 1021.5 and the Americans with Disabilities ACT ("ADA").  The Court concluded that California Government Code section 11135(a) does apply to the GR program (pages 14 to 15). The Court concluded that Plaintiffs are entitled to make application for attorney's fees under section 1021.5 (ECF 137, page 7) as successful parties (page 18).

48.     The Court set out a briefing schedule for the fees motion and at the "last footnote," footnote 7 on page 18 it wrote:

> "By way of guidance, this Court would not find that
> Plaintiffs were prevailing parties either procedurally or
> substantively as to all of the matters litigated in this case.
> Therefore, there will have to be a sufficient delineation
> not only as to hours expended but also as to the
> activities engaged in by counsel.  However, should the parties be
> able to agree upon the issue of the amount of attorneys'
> fees, the Court would be inclined to concur with whatever
> the parties agree to."

49.     During the oral argument on the entitlement to fees the Court

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

explained that:

> THE COURT:  I am not basing my decision on that.
> I have more or less said they can't get attorney's fees
> under that particular section because their catalyst
> theory doesn't work there.  There is no catalyst theory
> under federal law.  So they have lost that.  The question
> is whether or not they are allowed to do it under state
> law.  So that is what you should be arguing.
>
> THE COURT:  All right.  I will make my tentative
> my final, but, I caution you to read the last footnote in
> the tentative.  As hard as I might have appeared to be on
> the defense in this situation, if you guys come back with
> an amount that I find unreasonable, the shoe is going to
> be on the other foot.

4/5/2018 Hearing transcript page 10, lines 18 to 24; and page 21, lines 16 to 21.

50.    These are the matters that Plaintiffs did not prevail upon:

Procedural Matters
Motion for a preliminary injunction
Legal work prior to litigation
  (Other than formulating the letter to DPSS)
Recusal of Judge Wu
Violation of Rules of Professional Conduct

Substantive Matters
ADA claim
Universal screening

## IV.    **OUR COMPUTER REPORTS**

51.    My staff and I prepared Microsoft® Excel spreadsheets to capture all of the requested time and fees.  The entire spreadsheet is attached as Exhibit 7.  It shows all the time by all the 21 timekeepers from all the law firms but placed in chronological order.  Each line indicates the name of the timekeeper as well as that individual's law firm so the data can be filtered or sorted.  Ms. Menjivar records 97.0 hours for her work at Western Center and 603.1 hours when she was at Legal Aid and she is counted only once (to reach the 21 timekeepers) and her total time of 765.7 hours is for her work at both firms.

52.    Plaintiffs are represented by thirteen lawyers of record from these five separate Los Angeles law firms:

> Firm 1.
> CLAUDIA MENJIVAR (SBN 291981)
> cmenjivar@lafla.org
> YOLANDA ARIAS (SBN 130025)
> yarias@lafla.org
> BARBARA SCHULTZ (SBN 168766)
> bschultz@lafla.org
> MATTHEW CLARK (SBN 233736)
> mclark@lafla.org
> LEGAL AID FOUNDATION OF LOS ANGELES
> 5228 Whittier Boulevard
> Los Angeles, CA 90022
> Firm shown as "LAFLA" in our reports.
> Timekeepers: 5
> Hours requested: 1,564.3
> Fees requested: $1,018,224.00
>
> Firm 2.
> ROBERT D. NEWMAN (SBN 86534)
> rnewman@wclp.org
> ANTIONETTE D. DOZIER (SBN 244437)
> adozier@wclp.org
> WESTERN CENTER ON LAW AND POVERTY

1

2    3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010-2826
3    Telephone: (213) 235-2619
Facsimile: (213) 487-4727
4    Firm shown as "Western Center" in our reports
Timekeepers: 4
5    Hours requested: 1,467.4
6    Fees requested: $1,262,144.00

7    Firm 3.
8    ANNA RIVERA (SBN 239601)
anna.rivera@drlcenter.org
9    DISABILITY RIGHTS LEGAL CENTER
10   350 South Grand Avenue, Suite 1520
Los Angeles, CA 90071
11   Telephone: (626) 389-8277
12   Facsimile: (213) 736-1428
Firm shown as "DRLC" in our reports.
13   Timekeepers: 4
14   Hours requested: 504.9
Fees requested: $336,683.00
15

16   Firm 4.
ANNE RICHARDSON (SBN 151541)
17   arichardson@publiccounsel.org
18   DEEPIKA SHARMA (SBN 256589)
dsharma@publiccounsel.org
19   PUBLIC COUNSEL
20   610 S. Ardmore Avenue
Los Angeles, CA 90005
21   Telephone: (213) 385-2977
22   Facsimile: (213) 385-9089
Firm shown as "Public Counsel" in our reports.
23   Timekeepers: 3
24   Hours requested: 554.2
Fees requested: $415,000.00
25

26   Firm 5.
CHARLES S. BARQUIST (SBN 133785)
27   cbarquist@mofo.com
28   RYAN MALLOY (SBN 253512)

- 15 -        KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

rmalloy@mofo.com
HERIBERTO ALVAREZ (SBN 307048)
halvarez@mofo.com
MATTHEW HOFER (SBN 307055)
mhofer@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
Firm shown as "Morrison & Foerster" in our reports.
Timekeepers: 6
Hours requested: 2,746
Fees requested: $1,879,932.50

53.    Here, from **Exhibit 7** is a table with the timekeepers shown in order of time requested and also the time in our spreadsheet:

| Name | Firm | Level | Admitted CA | Total Requested Hours | Total Time in Spreadsheet |
|------|------|-------|-------------|-----------------------|---------------------------|
| Robert D. Newman, Jr. | W. Ctr | Genrl Counsel | 5/31/1979 | 1005.0 | 1059.5 |
| Claudia Menjivar | Lgl Aid/W.Ctr. | Attorney | 12/4/2013 | 765.7 | 845.0 |
| Heriberto Alvarez | MoFo | Associate | 12/3/2015 | 751.6 | 751.6 |
| Mathew Hofer | MoFo | Associate | 12/3/2015 | 601.3 | 601.3 |
| Matthew G. Clark | Lgl Aid | Attorney | 12/1/2004 | 439.9 | 503.4 |
| Charles Barquist | MoFo | Sr. Counsel | 6/6/1988 | 425.4 | 425.4 |
| Ryan Malloy | MoFo | Partner | 12/13/2007 | 417.8 | 417.8 |
| Anne Richardson | Pub. Counsel | Exec. Director | 12/13/1990 | 357.2 | 380.2 |
| Anna M. Rivera | Dis. Rights | Managing Atty | 12/1/2005 | 331.4 | 416.5 |
| Antoinette Dozier | W. Ctr | Staff Atty | 11/28/2006 | 327.2 | 352.2 |
| Alicia M. Lopez | MoFo | Paralegal | N/A | 318.1 | 318.1 |

- 16 -

| Name | Firm | Level | Admitted CA | Total Requested Hours | Total Time in Spreadsheet |
|------|------|-------|-------------|-----------------------|---------------------------|
| Yolanda Arias | Lgl Aid | Managing Atty | 12/14/1987 | 282.5 | 325.9 |
| Sean P. Gates | MoFo | Partner | 12/10/1996 | 231.8 | 231.8 |
| Alisa Hartz | Pub. Counsel | Attorney | 12/2/2012 | 154.0 | 155.5 |
| Ryan Bradley | Lgl Aid | Attorney | 12/7/2000 | 150.6 | 145.1 |
| Kara Janssen | Dis. Rights | Staff Atty | 12/2/2010 | 71.1 | 82.5 |
| Richard Diaz | Dis. Rights | Staff Atty | 12/3/2012 | 70.3 | 79.7 |
| Deepika Sharma | Pub. Counsel | Attorney | 6/3/2008 | 43.0 | 54.3 |
| Richard Rothschild | W. Ctr | Lit. Dir. | 12/18/1975 | 38.2 | 38.2 |
| Paula Pearlman | Dis. Rights | Exec. Director | 7/26/1983 | 32.1 | 33.2 |
| Barbara Schultz | Lgl Aid | Dir. Litigation | 12/14/1993 | 22.6 | 32.3 |
| Totals | | | | 6836.8 | 7249.50 |

54.    There is no "core group" of a few timekeepers. To get to 85% of the total time one must include the time by 12 timekeepers.

55.    A one-page timeline chart showing the total hours with the dates of services for all the timekeepers is attached as **Exhibit 8**.  This chart also indicates the four main events: the Demand Letter, the Complaint, The Hearing and the Dismissal. Only eight of the attorneys (Newman, Menjivar, Clark, Malloy, Rivera Arias, Rothschild and Schulz ) were somewhat active in the case for its duration. Most of them were active for only a small part of the time. The color coding used for each timekeepers indicates by the color of font which firm they are from. The key is Purple for Morrison Foerster, Orange for Western Center, Blue for LAFLA, Green for Public Counsel, and Black for DRLC. Ms. Menjivar worked at two firms but her correct total time is shown at only one.

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

56.    The California State Bar on-line records for each attorney are provided in **Exhibit 9**. Five of the attorneys have less than 5 years of experience and their time is 34% or 33% of the 6,836.8 hours of total time requested or the 7,319.5 hours shown in the spreadsheet:

| Name | Admitted CA | Hours requested | Hours in database |
|------|-------------|-----------------|-------------------|
| Claudia Menjivar | 12/4/2013 | 765.7 | 845.00 |
| Heribeerto Alvarez | 12/3/2015 | 751.6 | 751.6 |
| Mathew Hofer | 12/3/2015 | 601.3 | 601.3 |
| Alisa Hartz | 12/2/2012 | 154.0 | 155.5 |
| Richard Diaz | 12/3/2012 | 70.3 | 79.7 |
| Total for them | - | 2,342.9 | 2,433.1 |
| Percentage of the overall total | - | 34% | 33% |

57.    The chart in **Exhibit 8** has a schematic overview view of the staffing. Here is a table that shows the timekeepers and pertinent data on each of them:

| Name | Admitted CA | Hours in spd [and requested] | Work Dates | Tasks |
|------|-------------|------------------------------|-----------|-------|
| Robert D. Newman, Jr. | 5/31/1979 | 1059.5 [Requested 1005.0] | 6/2/14 to 4/26/18 | Management of case Settlement related Preliminary Injunction |
| Claudia Menjivar | 12/4/2013 | 845.0 [Requested 765.7] | 6/2/14 to 4/27/18 | Evaluation of GR process; declarations; coordination; settlement efforts |
| Heriberto Alvarez | 12/3/2015 | 751.6 [Requested 751.6] | 11/9/15 to 4/26/18 | [Pre-admission time is 38.1 hours] Discovery; declarations; team meetings. Some clerical tasks: see line 4235. |

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

| Name | Admitted CA | Hours in spd [and requested] | Work Dates | Tasks |
|---|---|---|---|---|
| Mathew Hofer | 12/3/2015 | 601.3 [Requested 601.3] | 11/9/15 to 4/26/18 | [Pre-admission time is 33.4 hours] Research; Case calendar; Assist others; Declaration edits; Team meetings. Some clerical time: see line 4234. |
| Matthew G. Clark | 12/1/2004 | 503.4 [Requested 429.9] | 5/30/14 to 4/17/18 | Conference calls; Documents; Meetings; Research |
| Charles Barquist | 6/6/1988 | 425.4 Requested 425.4 | 5/25/16 to 4/22/18 | Prelim. Injunction; ADA; MSA; Settlement Negot; Conferences |
| Ryan Malloy | 12/13/2007 | 417.8 [Requested 417.8] | 5/30/14 to 4/25/18 | Conferences; Complaint; Prelim. Inj.; Remedies; County Forms; MSJ; Fees |
| Anne Richardson | 12/13/1990 | 380.2 [Requested 357.2] | 10/4/15 to 4/27/18 | Experts; witnesses; Prelim. Inj.; Settlement; Fees |
| Anna M. Rivera | 12/1/2005 | 416.5 [Requested 331.4] | 6/2/14 to 4/27/18 | Documents; Settlement; Fees |
| Antoinette Dozier | 11/28/2006 | 352.2 [Requested 327.2] | 8/27/15 to 4/19/18 | Settlement; Documents; Depositions; Fees |
| Alicia M. Lopez | Paralegal | 318.1 [Requested 318.1] | 6/4/14 to 3/21/18 | Documents; Uploads; Team meetings; Update case files; Cite checks |
| Yolanda Arias | 12/14/1987 | 395.90 [Requested 282.5] | 5/30/14 to | Conferences; Supervise students; Review Model Office Concept; Fees. |
| Sean P. Gates | 12/10/1996 | 231.8 [Requested 231.8] | 6/4/14 to 1/8/16 | Complaint; Prelim Inj.; Demand; Settlement; White Paper; |
| Alisa Hartz | 12/2/2012 | 155.5 [Requested 154.0] | 1/7/16 to 8/12/16 | Rule 26(f) Report; Cease & Desist Issues; MSJ; Team calls |

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

| Name | Admitted CA | Hours in spd [and requested] | Work Dates | Tasks |
|---|---|---|---|---|
| Ryan Bradley | 12/7/2000 | 145.1 [Requested 150.6] | 5/30/14 to 4/26/16 | Meetings; Training law students; Interview potential clients; |
| Kara Janssen | 12/2/2010 | 82.5 [Requested 71.1] | 8/25/15 to 6/29/16 | Settlement conferences; Discovery; |
| Richard Diaz | 12/3/2012 | 79.7 [Requested 70.3] | 6/2/14 to 5/27/15 | Review charts; students training; Declarations; |
| Deepika Sharma | 6/3/2008 | 54.3 [Requested 43.0] | 10/5/15 to 11/14/16 | Site visits; Interview witnesses; |
| Richard Rothschild | 12/18/1975 | 38.2 [Requested 38.2] | 6/20/14 to 4/26/18 | Research; Fees |
| Paula Pearlman | 7/26/1983 | 33.2 [Requested 32.1] | 6/17/14 to 8/28/14 | Interview witnesses; |
| Barbara Schultz | 12/14/1993 | 32.3 [Requested 22.6] | 6/20/14 to 4/24/18 | Settlement; Meetings |
| Totals | | 7439.1 (includes law clerks and other no charges timekeepers) 7249.5 hours by listed timekeepers. [Requested 6836.8] | | |

58.    The time requested in the charts and said to be for the "merits" work is 6,021.1 hours.  The time requested for the fee application is said to be 815.6 hours.

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

59.    Here is the ranking of time requested for the merits work:

| Name | Firm | Level | Admitted CA | Ttl Hrs | Merits Hrs |
|------|------|-------|-------------|---------|------------|
| Robert D. Newman, Jr. | W. Ctr | Genrl Counsel | 5/31/1979 | 1005.0 | 888.3 |
| Claudia Menjivar | Lgl Aid/W.Ctr. | Attorney | 12/4/2013 | 765.7 | 700.1 |
| Heriberto Alvarez | MoFo | Associate | 12/3/2015 | 751.6 | 656.8 |
| Mathew Hofer | MoFo | Associate | 12/3/2015 | 601.3 | 504.1 |
| Ryan Malloy | MoFo | Partner | 12/13/2007 | 417.8 | 410.2 |
| Matthew G. Clark | Lgl Aid | Attorney | 12/1/2004 | 439.9 | 383.8 |
| Charles Barquist | MoFo | Sr. Counsel | 6/6/1988 | 425.4 | 337.3 |
| Anna M. Rivera | Dis. Rights | Managing Atty | 12/1/2005 | 331.4 | 298.9 |
| Antoinette Dozier | W. Ctr | Staff Atty | 11/28/2006 | 327.2 | 290.3 |
| Alicia M. Lopez | MoFo | Paralegal | N/A | 318.1 | 284.6 |
| Yolanda Arias | Lgl Aid | Managing Atty | 12/14/1987 | 282.5 | 247.8 |
| Anne Richardson | Pub. Counsel | Exec. Director | 12/13/1990 | 357.2 | 235.9 |
| Sean P. Gates | MoFo | Partner | 12/10/1996 | 231.8 | 231.8 |
| Alisa Hartz | Pub. Counsel | Attorney | 12/2/2012 | 154.0 | 154.0 |
| Ryan Bradley | Lgl Aid | Attorney | 12/7/2000 | 150.6 | 150.6 |
| Kara Janssen | Dis. Rights | Staff Atty | 12/2/2010 | 71.1 | 71.1 |
| Richard Diaz | Dis. Rights | Staff Atty | 12/3/2012 | 70.3 | 70.3 |
| Deepika Sharma | Pub. Counsel | Attorney | 6/3/2008 | 43.0 | 43.0 |
| Paula Pearlman | Dis. Rights | Exec. Director | 7/26/1983 | 32.1 | 32.1 |
| Barbara Schultz | Lgl Aid | Dir. Litigation | 12/14/1993 | 22.6 | 22.6 |
| Richard Rothschild | W. Ctr | Lit. Dir. | 12/18/1975 | 38.2 | 7.5 |

60.    Here is the ranking for time claimed for the fees work:

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

| Name | Firm | Level | Admitted CA | Ttl Hrs | Merits Hrs | Fees Hrs. |
|------|------|-------|-------------|---------|------------|-----------|
| Anne Richardson | Pub. Counsel | Exec. Director | 12/13/1990 | 357.2 | 235.9 | 121.3 |
| Robert D. Newman, Jr. | W. Ctr | Genrl Counsel | 5/31/1979 | 1005.0 | 888.3 | 116.7 |
| Mathew Hofer | MoFo | Associate | 12/3/2015 | 601.3 | 504.1 | 97.2 |
| Heriberto Alvarez | MoFo | Associate | 12/3/2015 | 751.6 | 656.8 | 94.8 |
| Charles Barquist | MoFo | Sr. Counsel | 6/6/1988 | 425.4 | 337.3 | 88.1 |
| Claudia Menjivar | Lgl Aid/W.Ctr. | Attorney | 12/4/2013 | 765.7 | 700.1 | 65.6 |
| Matthew G. Clark | Lgl Aid | Attorney | 12/1/2004 | 439.9 | 383.8 | 56.0 |
| Antoinette Dozier | W. Ctr | Staff Atty | 11/28/2006 | 327.2 | 290.3 | 36.9 |
| Yolanda Arias | Lgl Aid | Managing Atty | 12/14/1987 | 282.5 | 247.8 | 34.7 |
| Alicia M. Lopez | MoFo | Paralegal | N/A | 318.1 | 284.6 | 33.5 |
| Anna M. Rivera | Dis. Rights | Managing Atty | 12/1/2005 | 331.4 | 298.9 | 32.5 |
| Richard Rothschild | W. Ctr | Lit. Dir. | 12/18/1975 | 38.2 | 7.5 | 30.7 |
| Ryan Malloy | MoFo | Partner | 12/13/2007 | 417.8 | 410.2 | 7.6 |

## V.    COURT AND CODE GUIDANCE ON FEE SHIFTING

61.    The supporting entitlement and the lodestar method:

•    (a)  No person in the State of California shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is

funded directly by the state, or receives any financial assistance from the state.  Notwithstanding Section 11000, this section applies to the California State University.

Cal Gov Code § 11135

§ 1021.5. Attorney fees in cases resulting in public benefit
Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.  With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code.
Attorney's fees awarded to a public entity pursuant to this section shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in Serrano v. Priest, 20 Cal. 3d 25, 49.

Cal Code Civ Proc § 1021.5

"Fundamental to its determination -- and properly so  -- was a careful compilation of the time spent and reasonable hourly compensation of each attorney and certified law student involved in the presentation of the case. …  Using these figures as a touchstone, the court then took into consideration various relevant factors, of which some militated in favor of augmentation and some in favor of diminution.  Among these factors were: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other

employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; and (7) the fact that in the court's view the two law firms involved had approximately an equal share in the success of the litigation.

*Serrano v. Priest*, 20 Cal. 3d 25, 48-49, 141 Cal. Rptr. 315, 328, 569 P.2d 1303, 1316-17 (1977).

"The fee setting inquiry in California ordinarily begins with the familiar "lodestar" calculation, i.e., the number [*9] of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Regional Planning Com.*, 134 Cal.App.3d 999, 1004-1005, 185 Cal. Rptr. 145 (1982). The reasonable hourly rate is that prevailing in the community for similar work. *Id.* at 1004; *Shaffer v. Superior Court*, 33 Cal.App.4th 993, 1002, 39 Cal. Rptr. 2d 506 (1995). The lodestar figure may then be adjusted based on consideration of factors specific to the case in order to fix the fee at the fair market value for the legal services provided. *Serrano v. Priest*, 20 Cal.3d 25, 49, 141 Cal. Rptr. 315, 569 P.2d 1303 (1977). This approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary. *Id.* at 48, fn. 23."

*Bassam v. Bank of Am.*, No. CV 15-00587-AB (FFMx), 2016 U.S. Dist. LEXIS 193423, at *8-9 (C.D. Cal. Mar. 4, 2016)

"California courts utilize the lodestar method to calculate an award of attorneys' fees. *Ketchum v. Moses*, 24 Cal. 4th 1122, 104 Cal. Rptr. 2d 377, 17 P.3d 735, 742 (Cal. 2001). The Court

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

calculates the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community [*3] for similar work.  *See id.* at 741. The Court may then adjust the lodestar figure in light of a number of relevant factors specific to the case.  *See Serrano v. Priest*, 20 Cal. 3d 25, 141 Cal. Rptr. 315, 569 P.2d 1303, 1316-17 (Cal. 1977)."

*Linlor v. NRA of Am.*, No. 17cv203-MMA (JMA), 2017 U.S. Dist. LEXIS 81507, at *2-3 (S.D. Cal. May 25, 2017)

### A.      Hourly Rates for Reasonable Time

62.      After careful compilation of the reasonable time, the Court applies the reasonable hourly rates prevailing in the community for *non-contingent* litigation of the same type, pursuant to the relevant and settled law for Code of Civil Procedure section 1021.5 fee-shifting:

"In Serrano IV, applying the same principles to the statutory fee award under Code of Civil Procedure section 1021.5, we reiterated that fee awards should be fully compensatory.  We approved the calculation of attorney fees beginning with a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type.  ( *Serrano IV*, *supra*, 32 Cal. 3d at p. 625.)  We remarked that the reasonable value of attorney services is variously defined as the 'hourly amount to which attorneys of like skill in the area would typically be entitled.'  (*Id*. at p. 640, fn. 31; see also id. at p. 643 ["Services compensable under [Code of Civil Procedure] section 1021.5 are computed from their reasonable market value"].)

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1133, 104 Cal. Rptr. 2d 377, 385, 17 P.3d 735, 742 (2001, emphasis in original)

## VI.   HOURLY RATE ANALYSIS

63.      The Fee Motion seeks fees for time by 21 timekeepers from four firms that are public-interest law firms and time by one large private firm handing the matter on a "pro bono" basis.  None of them were being paid on an hourly rate basis for this engagement.  Time by two of the timekeepers (Alvarez and Hofer) is requested at attorney rates of $550 per hour when they have not yet been admitted to practice law.  That time alone is $36,740.00 in fees.

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

64.    The rates Plaintiffs request appear to be contingency rates with some sort of multiplier built in to them.  They are not supported by the actual data on non-contingent rates that are **actually paid** for similar work in Los Angeles.

A.    **Real Rate Report:**

65.    In assessing the reasonableness of the hourly rates requested by Plaintiffs' counsel in comparison to the community, I reviewed the most recent edition of the Real Rate Report Snapshot published in December 2017 ("Report"). This Report is widely accepted in the Central District of the California District Courts as authoritative and in my experience it has rates that mirror what I see in actual invoices for legal work.  This Report summarizes anonymized databases containing the rates paid for $9.02 billion in fees billed in the U.S. from 2014-2016, including fees paid to more than 4,620 law firms for legal work done by more than 112,000 timekeepers.  It also sets forth the hourly rates **actually paid** for Los Angeles "General Litigation" matters, along with its methodology and procedures. Most of the data was taken from actual invoice line items submitted through an e-billing system by US law firms for work performed.  Attached as **Exhibit 10** is the entire 181-page Report.  The background is shown at pages 1–6 and pages 13, 132, 173, 177, 179 and 181 of the 2017 Real Rate Report Snapshot ("Report") which set forth its contents, hourly rates actually paid for Los Angeles "General Litigation" matters, along with its methodology and procedures.  It is published by CEB/Gartner and Wolters Kluwer, the €4.2 billion information services company. This is the latest iteration; it was made available in late December of 2017.

66.    As explained in the Report on its page 6, the anonymized database on actual rates paid that are used for the 2017 Real Rate Report includes more than $9.02 billion in fees billed for legal services in the United States during 2014 to 2016.  The data comprise paid fees to more than 4,620 law firms for legal work by more than 112,000 timekeepers.  As also explained at page 173 of this Report, most

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

of the data was taken from actual invoice line items submitted by US law firms for work performed.  All invoices were submitted through the ELM Solutions e-billing systems such as the TyMetrix billing system.

67.     These are not "insurance defense" rates.  At page 177 of the Report it states: "[W]e removed data related to insurance company defense litigation for all analyses unless noted otherwise."  This Report assembles the data in several ways that are relevant for this matter as discussed below.

68.     The 2012 edition of the Real Rate Report was the first one published. It has been updated and (in my opinion) improved each year since with objective data on what rates are **actually paid** for many kinds of litigation.  Before this became available the process of demonstrating rates was contentious and unseemly, with hidden multipliers and uncontested or default results submitted that were said to support the claimed rates, along with *ad hominem* comments on timekeepers by opponents.  In my opinion the opinions on rates that precede 2013 are suspect and should be reexamined due to the lack of the Real Rate Report data.

69.     The Report takes its data in part for Tymetrix. Based on my experience working with the very widely-used electronic invoicing system known as "TyMetrix," and my familiarity with the TyMetrix procedures used to process and pay electronic invoices, the Real Rate Report, first published in 2012, and updated yearly is currently the most reliable guide for determining non-contingent hourly rates for Los Angeles litigation.

70.     The Report is now updated each year, with the most recent being the 2017 Real Rate Report that was published in December of 2017.  Over the years I have found the Real Rate Report data to be excellent and reliable with data that matches what I see in law firm invoices that I have reviewed.  There are also many decisions in the federal courts Central District of California applying the dataset forth in the Real Rate Report, finding that it is a more reliable indication of reasonable hourly rates than unscientific surveys or self-reported hourly rates.  (See,

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc*., 2016 WL 5938722, at \*11 (C.D. Cal. May 16, 2016); *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at \*11 (C.D. Cal. Aug. 4, 2015); *Hicks v. Toys "R' Us-Delaware, Inc.*, 2014 WL 4670896, at \*1 (C.D. Cal. Sept. 2, 2014), and *Rueda v. ADT LLC*, 2016 U.S. Dist. LEXIS 4361, \*3-4 & n.3 (C.D. Cal. Jan. 14, 2016). *Nippon Yusen Kabushiki Kaisha v. Multi-Trans Shipping Agency, Inc.*, No. 16-9523 PSG (AGRx), 2017 U.S. Dist. LEXIS 209358, at \*15-16 (C.D. Cal. Dec. 12, 2017)).

71.    Attached as **Exhibit 11** for ease of reference, are pages 26, 33 and 38 accurately printed and copied from the 2017 Real Rate Report.

72.    Page 26 provides 1,450 examples (the total of "n" numbers) of rates actually paid for work by partners and associates in Los Angeles assembled by quartile.[5] It has 637 examples for partners and 813 examples for associates.

73.    This data is based on many examples of actual rates paid for non-contingent similar matters in Los Angeles. **Exhibit 11** shows that the **actual rates paid** for similar matter in Los Angeles is a median rate of $545.00 for partners and a first quartile rate of $257.92 (~$258) per hour for associates.

74.    Here is a composite "snip" from **Exhibit 11**, the Report's page 26 for Los Angeles lawyers:

## Section I: High-Level Data Cuts

**Cities**
By Matter Type

| 2016—Real Rates for Partners and Associates | | | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2016 | 2015 | 2014 |
| Los Angeles, CA | Litigation | Partner | 637 | $346.30 | $545.00 | $775.00 | $587.44 | $568.03 | $526.03 |
| | | Associate | 813 | $257.92 | $410.00 | $565.00 | $423.87 | $400.67 | $374.89 |
| | Non-Litigation | Partner | 663 | $485.00 | $675.00 | $918.72 | $709.09 | $703.57 | $661.68 |
| | | Associate | 932 | $384.11 | $525.00 | $697.28 | $547.51 | $495.99 | $477.43 |

---

[5]    In statistics the first quartile (Q1) is defined as the middle number between the smallest number and the median of the data set.  The second quartile (Q2) is also called the Median of the data.  The third quartile (Q3) is the middle value between the Median and the highest value of the data set.

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

75.     This range of rates ($545 partners/$258 associates) is also what I see *actually paid* for litigation for litigation work in the Los Angeles and that is the rate structure that appears to be the non-contingent hourly rate for similar litigation in Los Angeles area before any consideration of a multiplier.

76.     While the social problem is difficult, the legal work is not cutting edge or unusual as there is no test for compliance with the ADA in these circumstances and most of the work was in cooperation with the County to see what could be done to help make the GR process better for applicants with a mental disability. The time for the associates was mostly learning or training time or simple discovery work of the traditional kind. It is therefore my opinion that at the most the *median* timekeeper rate of $545 for partner time and *first quartile* timekeeper rate of $258 for associate time is the non-contingent hourly rates paid for similar litigation rates that should be applied to Plaintiffs' timekeepers in the instant matter.

## B.     Effect of rate adjustment on ALL time submitted

77.     After those rates are applied in **Exhibit 4**, the total fees for all 6,836.8 hours of requested/submitted time is $2,623,597.00.  If one applies the 5% and 15% adjustments offered by Plaintiffs then the balances are $2,492,417.15 and then $2,118,554.58 as shown in **Exhibit 4**.

78.     However, that total must be adjusted to account for the pre-litigation work of $701,960.70 (at adjusted rates) and for $260,640.30 for the unsuccessful Preliminary Injunction effort (at adjusted rates), as well as for some format and staffing issues. The hours for the four public interest law firms in our database is 522.8 hours more than the time requested in the charts and a reduction to account for this disparity must be made as we have done in **Exhibit 12**.  Those issues are a "screening" time, wasteful investigation into a recusal motion, the investigation into the requirements of the Rules of Professional Conduct on contacting a represented party, Administrative work, clerical time and Team meetings / office conferences /

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

travel/ training time that I have identified in **Exhibit 7** and will explain (and quantify) in the next sections.

## VII.    THE EXCEL COMPUTER REPORTS

79.    We have listed the time and fees at both the requested rates and the adjusted rate scenarios in our Microsoft® Excel database, **Exhibit 7** which has all the information submitted by Plaintiffs.  We have added the adjusted rate and adjusted fees column as well as columns for clerical time, administrative time, unused legal work time (recusal and RPC issues), screening time and meetings/conferencing and training time.

### A.    The Requested Totals Do Not Match the Plaintiffs' Exhibits

80.    The **Exhibit 7** spreadsheet has 7,599 lines and 7,439.1 hours of time. After deducting the "no charge" time of 119.6 hours for Ms. Barajas, Ms. Sepler-King and the Law Clerks the net total for all the firms is 7,319.5 "database" hours vs. the 6,836.8 "chart" hours of time claimed by the fee motion[6].  This is a difference of 482.7 hours – or 7% (482.7/6,836.8) of the total time (which is requested) that is not explained. **Exhibit 12** at line 35.

81.    There is no way to identify exactly which of those hours have been reduced by the public interest firms yet still submitted as part of their declaration in support of fees.

82.    It is not reasonable to submit unexplained time records that do not match and support the amount of the request. I have prepared a spreadsheet attached as **Exhibit 12** for the discrepancies in time by the four public interest law firms only (as the Morrison & Foerster hours balance) and the adjustment needed is either $353,280.00 at requested rates or $206,848.20 at adjusted rates.

---

[6]    Ms. Rivera's hours are said to be reduced from 351.4 hours to 298.8 hours in her declaration (page 13, line 3) but they are listed in the provided Table as 331.4 hours (ECF 144, page 28). We show 416.5 hours for her in our spreadsheet, Exhibit7.  That includes 19.1 hours as" no charge" time and if that is deducted from her 416.5 hours the balance is still 397.4 hours of time for her.

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

83. The Morrison Foerster time submitted is the net time shown by its exhibits.

84. The "merits" time shown by Plaintiffs' Exhibit 1 tables is 6,021.1 hours and the "fees" time is 815.6 hours for a total of 6,836.7 hours of time . (ECF 144, pages 26 to 33).

**B.    Time and Fees by Phases**

85. I used the filter and MS Excel formula =SUBTOTAL(9,N2:N7599) to calculate the times and fees in each of the three phases at both the requested and adjusted hourly rates for certain lines identified in the spreadsheet:

| Phase | Hours | Fees at requested rates | Fees at adjusted rates |
|---|---|---|---|
| Pre-Suit<br>Lines 2 to 2066 | 1,747.65 | $1,255,994.00 | $701,960.70 |
| Merits<br>Lines 2067 to 6359 | 4,303.55 | $2,962,412.50 | $1,559,593.60 |
| Atty Fees (Entitlement and Amount)<br>Lines 6360 to 7599 | 1,387.9 | $1,031,190.50 | $556,958.90 |

**C.    Adjustments to the Requested Fees**

86. Pre-suit time and fees are not normally recoverable under California Code of Civil Procedure section 1021.5 claims.  The time for the Settlement Demand to DPSS is indicated by an "X" in column labeled "Demand" in **Exhibit 7**.  This is a total of 19.3 hours and fees of $15,481.50 at requested rates or $8,796.50 at requested rates.  That is included in the "Pre-Suit" time above.  Since the "catalyst theory" doctrine requires that a reasonable settlement be attempted before filing suit, this is analogous to an administrative exhaustion requirement for some kinds of claims and that limited time is customarily allowed in a fee shifting motion.  The balance of time and fees is not shifted.

87. The "pre-suit" time for preparing the "White Paper" is 111.3 hours of time (by 11 timekeepers) and fees of either $94,990.50 at requested rates or

$54,186.60 at adjusted rates. This appears to be part of the regular business activities of the Plaintiffs in order to understand the way the needs of their clients are handled. Mr. Gates shows 67.9 hours and Mr. Newman shows 10.3 hours for the White Paper.

88.    The requested time has 746.8 hours for the attempted but unsuccessful attempt to obtain a mandatory preliminary injunction and that is fees of $512,802.50 at requested rates or $260,640.30 at adjusted rates. The time for the injunction work was also calculated by plaintiffs' counsel according to the work descriptions that are shown at lines 3969 -71 *et seq*.

89.    The "Atty Fees" time of 1,387.9 hours includes both the entitlement to fees work and the fee application time.

90.    The number of timekeepers on the matter leads to incessant conferences, meetings, traveling, emails and reviewing each other's work. Here are the totals:

| Task | Hours | Fees at requested rates | Fees at adjusted rates |
|---|---|---|---|
| Meetings & Conferences | 1,998.65 | $1,489,299.00 | $812,423.50 |
| Travel/Driving | 532.0 | $401,047.00 | $215,196.00 |
| Review | 2446.9 | $1,703,442.50 | $889,352.50 |
| Emails | 1,301.6 | $1,106,647.50 | $515,236.10 |
| Totals | 6,279.35 | $4,700,436.00 | $2,432,208.10 |

91.    The spreadsheet (**Exhibit 7**) has the letter "M" in column J to indicate the meetings and conferences. These have a range of attendees up to 11 timekeepers and usually take about one hour. This does not include the time for the hundreds of emails that are sent. The total for the meetings and conferences is 1,998.65 hours and that is $1,489,299.00 at requested rates or $812,423.50 at adjusted rates.

92.    The conferencing time appears to be training time for some of the

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

attendees.  This is particularly true in "pro bono" matters as time really begins to add up in such matters as newer lawyers seem to run up the hours on "pro bono" matters as they need the time and there is usually no restriction or write-down on the hours as the time is not sent off to clients in invoices.  The team meetings and conferencing is really continuous and that may also be because of the "pro bono" staff being so carefully monitored and trained. **Exhibits 4 and 9** show that five timekeepers with less than five years of experience (Menjivar, Alvarez, Hofer, Hartz and Diaz) recorded 2,342.9 hours of requested time, which is 34% of the total time.  As explained above in paragraphs 89 to 90, nearly 2,000 hours of meetings time including some time for very inexperienced timekeepers is excessive.  Because some of this time is already reduced for other reasons, at the very least a 10% reduction of this time and fees for conferencing, team meetings and training time is warranted in my opinion.  That is $470,043.60 at the requested rates or $243,220.81 at the adjusted rates.

93.    CAVEAT: If the other adjustments I recommend for the removal of the fees for the pre-litigation work and the reduction of the time and fees for the unsuccessful preliminary injunction work is **not** removed by the Court, than an adjustment of 50% of the total fees in this group shown in paragraph 89 would be a reasonable adjustment. That would be an adjustment of $2,350,218.00 at requested rates or $1,216,104.05 at adjusted rates.

94.    The time for administrative or clerical work is for things such as inquiring on why the court reporter was late to a deposition, drafting an engagement letter, research court rules, assisting with the filing of a waiver of notice, assembling a list of materials in a packet for new members of the team, arranging a meeting, sending letter, writing to vendors and similar things that are usually subsumed as overhead matter within the firm's hourly rates for its professionals. They are not usually billed to fee-paying clients in my experience and I recommend that all of the 53.5 hours of time and fees of either $31,229.50 at requested rates or

KNAPTON DECLARATION ISO OPPOSITION TO MOTION FOR ATTORNEYS' FEES

$16,133.70 at adjusted rates be struck from the request.

95.   The wasted time for researching the recusal of the judge is 14.6 hours an fees of either $11,891.00 at requested rates or $6,780.00 at adjusted rates as this was a unwarranted effort. These times are shown by the word "Recusal" in column M of **Exhibit 7**.

96.   The time inadvertently left in for "screening" is shown by placing that word in the Task column of the spreadsheet. It is 21.3 hours and that is $116,564.50 at requested rates or $9,189.30 at adjusted rates.

97.   The wasted time to research California's Rules of Professional Conduct to determine whether Plaintiffs' lawyers could continue to contact the County after it was represented by counsel is 73.9 hours and that is either $43,913.00 at requested rates or $22,051.00 at adjusted rates and that should be not allowed for something that is a well-known prohibition.

98.   There is some time left in for the 2 plaintiffs that were dismissed from the case: Los Angeles Catholic Worker (who dropped out very early on, after they responded to initial discovery) and Timothy Laraway (an individual who settled out with for very low dollars around the time the organizational Plaintiffs were moving to voluntarily dismiss their case; I understand that County agreed that he would not be entitled to seek recovery of his fees.

99.   There is 12.3 hours for Laraway and 3.9 hours of time for Catholic Worker and that is fees of $10,695.00 at requested rates or $5,393.70 at adjusted rates that should be deducted.

## VIII.  <u>RECAPITULATION OR SUMMARY OF ANALYSIS OF FEES</u>

100.   Here is a summary of the above points and analysis:

|  | At Requested Rates | At Adjusted Rates |
|---|---|---|
| Total all time/fees in spreadsheet (Ex. 4) | $4,912,483.00 | $2,623,597.00 |
| "7%" adjustment (Ex. 5) | ($353,280.00) | ($206,848.20) |

|  | At Requested Rates | At Adjusted Rates |
|---|---|---|
| Pre-Litigation | ($1,255,994.00) | ($701,960.70) |
| Demand Letter (added in) | +$15,481.50 | +$8,796.50 |
| Preliminary Injunction | ($512,802.50) | ($260,640.30) |
| Meetings/Conferences/Emails/Travel-Driving time (10% reduction) | ($470,436.60) | ($243,220.81) |
| Administrative/clerical | ($31,229.50) | ($16,133.70) |
| "Screening" time | ($16,564.50) | ($9,189.30) |
| Pre-admission time (71.5 hrs.) | ($39,325.00) | ($18,447.00) |
| Recusal research | ($11,891.00) | ($6,780.30) |
| RPC time | ($43,913.00) | ($22,051.00) |
| Laraway and Catholic Worker time | ($10,695.00) | ($5,393.70) |
| Balance of fees | $2,181, 833.40 | $1,141,728.49 |

## IX.    CONCLUSION

### A.    Fees:

101.  If the Court finds that the conditions necessary for an award are satisfied, then it is my opinion that the rates for Los Angeles should be applied to reasonable time.  If the Court determines that no time and fees for the pre-litigation work is allowed then my opinion is that reasonable and necessary fees are **$1,141,728.49**.

### B.    Costs:

102.  The requested costs of $79,192.02 for Morrison & Foerster includes two items that are either overhead ($25,789.11 for CALR) or not justified ($20,081.46 for Epiq). The balance of $33,321.45 is in order and reasonable for this firm's cost.Three of the other firms list modest and reasonable costs related to travel of $2,491.11 for DRLC; $74.36 for LAFLA; and $262.64 for Western Center.  The total for all the firms' reasonable costs is $36,149.56.

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES

1        I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3        Executed on May 31, 2018 at Los Angeles, California.

4

5

6

7                GERALD G. KNAPTON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPTON DECLARATION ISO OPPOSITION
TO MOTION FOR ATTORNEYS' FEES