UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8982-GW(RAOx) | Date | July 12, 2018 |
|---|---|---|---|
| Title | *Housing Works, et al. v. County of Los Angeles, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Richard A. Rothschild | Isaiah Zachary Weedn |
| Charles S. Barquist | Gregory F. Hurley |
| Anne K. Richardson | |
| Robert Newman | |
| Claudia Menjivar | |
| Anna M. Rivera | |

**PROCEEDINGS:** **PLAINTIFFS HOUSING WORKS AND INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA'S MOTION FOR ATTORNEYS' FEES AND COSTS IN AN AMOUNT SPECIFIED [144]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would grant the Motion. Plaintiffs shall prepare and provide the Court with an order consistent with its ruling.

      :  20

Initials of Preparer    JG

<u>*Housing Works v. County of Los Angeles*</u>; Case No. 2:15-cv-08982-GW-(RAOx)
Tentative Ruling on Motion for Attorneys' Fees

**I. Background**

    <u>A. Procedural Background</u>

Housing Works and Independent Living Center of Southern California, Inc. ("ILC") (collectively, "Plaintiffs") filed this action against the County of Los Angeles (the "County"), the County of Los Angeles Board of Supervisors (the "Board"), and the Los Angeles County Department of Public Social Services ("DPSS") (collectively, "Defendants"), alleging three causes of action: (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (2) violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and (3) violation of California Government Code § 11135. *See generally* Complaint, Docket No. 1. Two other plaintiffs - Los Angeles Catholic Worker ("Catholic Worker") and Timothy Laraway - were previously dismissed. *See* Docket Nos. 31 and 130, respectively. Plaintiffs' allegations related to Defendants' administration of the County's General Relief ("GR") program, which provides benefits to indigent County residents. *See generally* Complaint. Plaintiffs alleged that the GR program violated federal and state law in that the policies and procedures in place at the time this lawsuit was filed systematically discriminated against mentally disabled persons. *See generally id.* Defendants changed some of those policies and procedures during the course of this litigation and on November 13, 2017, the Court dismissed this action without prejudice upon Plaintiffs' motion. *See generally* Dismissal Order, Docket No. 116.

Following dismissal, Plaintiffs sought an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5. *See generally* Motion for Attorneys' Fees, Docket No. 131. Over Defendants' opposition, the Court found that Plaintiffs are entitled to an award of attorneys' fees under California's catalyst theory but only as to their state law cause of action.[1] *See generally* Attorneys' Fee Order, Docket No. 137. The Court ordered further briefing only as to the amount of attorneys' fees it should award. *See id.* Plaintiff thereafter submitted the instant Motion for Attorneys' Fees and Costs in an Amount Specified ("Motion"). *See generally* Docket No. 144. Defendants oppose an award of fees and costs in the amount Plaintiffs propose. *See*

---

[1] While the ADA and the Rehabilitation Act do allow the award of attorney fees to a prevailing party, the Supreme Court in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001), held that such awards are only possible based upon "a court-ordered change in the legal relationship between the plaintiff and the defendant" and not merely under a "catalyst theory" of recovery.

1

*generally* Opposition to Motion ("Opp'n"), Docket No. 147. Plaintiffs filed a Reply (Docket No. 149); and the Defendants filed an unauthorized Supplemental Brief (Docket No. 151) to which the Plaintiffs filed an unauthorized response (Docket No. 152).

B.  Amount Sought by Plaintiffs

Plaintiffs seek a total award of attorneys' fees and costs of $6,031,661. *See* Motion at 17. This amount is calculated by taking a lodestar of $3,966,427 and applying a 1.5 multiplier, then combining the product with $82,020 in costs.[2] Plaintiffs calculate the lodestar by first aggregating the billings of every attorney and paralegal that worked on this case from before the time it was filed through the filing of this Motion. *See id.* at 4; *see also* Declaration of Robert Newman ("Newman Decl."), Exhibits B-E (Western Center on Law and Poverty ("WCLP") Billing Records), Docket No. 144-2; Declaration of Anne Richardson ("Richardson Decl."), Exhibit D (Public Counsel ("PC") Billing Records), Docket Nos. 144-7, 144-8; Declaration of Yolanda Arias ("Arias Decl."), Exhibits A-E (Legal Aid Foundation of Los Angeles ("LAFLA") Billing Records, Docket No. 144-9; Declaration of Anne Rivera ("Rivera Decl."), Exhibit H (Disability Rights Legal Center ("DRLC") Billing Records), Docket No. 144-10; Declaration of Charles Barquist ("Barquist Decl."), Exhibits A-G (Morrison & Foerster ("M&F") Billing Records), Docket No. 144-11. Plaintiffs then eliminated the billings of any attorney who worked fewer than 20 hours on the case. *See* Motion at 4. Plaintiffs also eliminated the billings of any law clerk who worked on the case. *See id.* at 5. What remains are the billings of 21 attorneys[3] and a paralegal.

Plaintiffs further reduced the amount sought by claiming time for no more than two attorneys at any court hearing or deposition. *See id.* Next, Plaintiffs adjusted all billings so that no more than 10 percent of any attorney's billings are attributable to "team conference calls and

---

[2] Plaintiffs modify the figures slightly in their reply brief. *See* Reply in Support of Motion ("Reply"), Docket No. 149. Plaintiffs acknowledge that their initial lodestar calculation was inadvertently overstated by $10,255 and concede that it should be reduced by that amount. *See id.* at 25. However, Plaintiffs then seek to increase the lodestar by $50,000 to compensate for work on the reply brief and in preparation for this hearing. *See id.* Thus, the revised lodestar sought is $4,006,172. *See id.* Applying the Plaintiffs' requested 1.5 multiplier and adding $82,020 in costs results in a total sum sought of $6,091,278.

[3] The records and a summary chart provided by Plaintiffs indicate that four attorneys from WCLP worked in excess of 20 hours on this case, that three attorneys from PC worked in excess of 20 hours on this case, that five attorneys from LAFLA worked in excess of 20 hours on this case, that four attorneys from DRLC worked in excess of 20 hours on this case, and that five attorneys from M&F worked in excess of 20 hours on this case. Claudia Menjivar worked in excess of 20 hours on this case both while she was employed by WCLP and then later while employed by LAFLA.

2

in-person meetings to discuss strategy and divide responsibilities." *Id.* Plaintiffs then made an across-the-board five percent reduction "to compensate for any remaining arguably duplicative or unproductive hours." *Id.*

To that figure Plaintiffs eliminated billings for time spent on the claims of Laraway and Catholic Worker. *See id.* at 10. Plaintiffs then eliminated billings for time spent on a "validated instrument to screen mental disabilities" that Plaintiffs proposed but was never adopted or used by Defendants. *See id.* Finally, Plaintiffs imposed a second across-the-board reduction of fifteen percent in recognition of the fact that Plaintiffs' success in this action was not total and complete. *See id.* For example, Plaintiffs sought but did not receive a preliminary injunction ("PI") in this matter. *See generally* Civil Minutes (PI Tentative Ruling), Docket No. 80. These calculations produced the lodestar of $3,966,427.

The following chart summarizes Plaintiffs' claimed lodestar.

| Firm | Attorney | Years of Experience | Claimed Rate/Hr. | Hours | Lodestar |
|---|---|---|---|---|---|
| WCLP | Rothschild | 43 | $975 | 38.2 | $37,245 |
| | Newman | 41 | $950 | 1005 | $954,750 |
| | Dozier | 12 | $670 | 327.2 | $219,224 |
| | Menjivar | 5 | $525 | 97 | $50,925 |
| PC | Richardson | 29 | $850 | 357.2 | $303,620 |
| | Sharma | 11 | $650 | 43 | $27,950 |
| | Hartz | 6 | $545 | 154 | $83,930 |
| LAFLA | Arias | 32 | $850 | 282.5 | $240,125 |
| | Schultz | 25 | $800 | 22.6 | $18,080 |
| | Bradley | 18 | $700 | 150.6 | $105,420 |
| | Clark | 14 | $690 | 439.9 | $303,531 |
| | Menjivar | 5 | $525 | 668.7 | $351,068 |
| DRLC | Pearlman | 36 | $920 | 32.1 | $29,532 |
| | Rivera | 12 | $690 | 331.4 | $228,666 |
| | Janssen | 8 | $565 | 71.1 | $40,172 |
| | Diaz | 6 | $545 | 70.3 | $38,314 |
| M&F | Barquist | 40 | $1050 | 425.4 | $446,670 |
| | Gates | 22 | $950 | 231.8 | $220,210 |
| | Malloy | 11 | $875 | 417.8 | $365,575 |
| | Alvarez | 3 | $550 | 751.6 | $413,380 |
| | Hofer | 3 | $550 | 601.3 | $330,715 |
| | Lopez | Paralegal | $325 | 318.1 | $103,383 |
| | | | | Total: 6,836.8 | Total: $4,912,485[4] |

---

[4] By the Court's calculations, PC's claims total $415,500. PC appears to have rounded down to an even $415,000 and thus the Court's calculations are $500 more than Plaintiffs'. Additionally, the Court rounded all figures to the

|  |  |  |
|---|---|---|
|  |  | Less 5%: $4,666,861 |
|  |  | Less 15%: $3,966,427 |

### C. Defendants' Response

Defendants argue that Plaintiffs' request for $6,031,660 is unreasonable and unsupported. *See generally* Opp'n. First, Defendants argue that Plaintiffs did not achieve their primary litigation goal and that instead Plaintiffs' success in this case was limited. *See id.* at 3-8. While not irrelevant to the Court's consideration of this Motion, the Court would find that Defendants arguments in this regard are a retread of the arguments Defendants advanced in the first phase of the Court's consideration of the attorneys' fee issue. *Compare id.* at 8 ("Taken together, these items demonstrate that DPSS had policies in place to facilitate reasonable accommodation requests prior the filing of this lawsuit.") *with* Opposition to Motion for Attorneys' Fees, Docket No. 133, at 30 ("Taken together, these items demonstrate that DPSS had policies in place to facilitate reasonable accommodation requests prior the filing of this lawsuit."). The Court ruled on that issue and found that Plaintiffs are entitled to attorneys' fees as a general matter. *See* Attorneys' Fee Order.

With regard to the actual attorneys' fees requested, Defendants argue that the hourly rates claimed by Plaintiff's attorneys are unreasonable and unsupported by data on non-contingent rates paid for similar work in Los Angeles. *See* Opp'n at 10. In support of this argument, Defendants rely on the opinions of Gerald Knapton, an attorney from the law firm Ropers Majeski whose practice focuses on legal billing and ethics issues.[5] *See* Declaration of Gerald Knapton ("Knapton Decl."), Docket No. 147-1, ¶ 3. Mr. Knapton urges the Court to disregard the hourly rates cited by Plaintiffs and instead employ the Wolters Kluwer/CEB, *2017 Real Rate Report: Lawyer Rates, Trends and Analysis* ("Real Rate Report"). *See id.* ¶¶ 65-76. Using the Los Angeles rates contained in the Real Rate Report, Mr. Knapton advocates that the Court

---

nearest dollar, thus creating another discrepancy of $1 between the Court's calculations and those provided by Plaintiffs.

[5] Plaintiffs lodge a number of objections to statements contained within Mr. Knapton's declaration on the bases that the statements lack foundation, are speculative, or are expert opinions lacking sufficient support. *See generally* Plaintiffs' Objections, Docket No. 150. The Court finds that Mr. Knapton proffers sufficient justification to form his opinions as a general matter and thus overrules the objections. In considering the persuasiveness of Mr. Knapton's declaration, the Court does consider the information Mr. Knapton utilized to form his opinions.

reduce partner billings to $545 per hour (the median rate for litigation partners in Los Angeles) and reduce associate billings to $258 per hour (the first quartile rate for litigation associates in Los Angeles). *See id.* ¶ 73. Mr. Knapton justifies using the median rate for partners and the first quartile rate for associates by stating that "[w]hile the social problem is difficult, the legal work is not cutting edge or unusual as there is no test for compliance with the ADA in these circumstances and most of the work was in cooperation with the County to see what could be done . . . ." *Id.* ¶ 76.

Based on the billing records provided by Plaintiffs, Mr. Knapton proposes a lodestar of $2,118,555, calculated using his recommended Real Rate Report rates and then applying the five and fifteen percent across-the-board reductions Plaintiffs propose. *Id.* ¶ 77. In so doing, Mr. Knapton ascribes the $258 per hour first quartile rate for litigation associates in Los Angeles to Ryan Bradley, Matthew Clark, Antoinette Dozier, and Deepika Sharma, attorneys with 18, 14, 12, and 11 years' experience, respectively. *See id.*, Exhibit 4, Docket No. 148-1. Mr. Knapton then recommends further reductions of $701,961 for work performed before the litigation was filed and $260,640 for work performed on Plaintiffs' unsuccessful efforts to obtain a PI in this matter. *See id.* ¶ 78. Reducing by those amounts, Mr. Knapton recommends an award of attorneys' fees of no more than $1,155,954. *See id.* Mr. Knapton does not explain why the Court should apply the fifteen percent across-the-board reduction Plaintiffs proposed in recognition of the fact that their success in this action was not total and complete and then also reduce by $260,640 for Plaintiffs' counsels' work on the PI – a matter for which Plaintiffs obviously failed to succeed.

Mr. Knapton additionally proposes an alternate calculation. He begins with a lodestar of $2,623,597, calculated using the Real Rate Report rates but without applying either of Plaintiffs' proposed across-the-board reductions. *Id.* ¶ 80. He then applies an across-the-board seven percent reduction to account for the fact that the billing records submitted to the Court are inconsistent with Plaintiffs' claimed amount.[6] *Id.* ¶¶ 80-82. Mr. Knapton then eliminates all fees incurred "pre-suit," fees incurred related to the never-obtained PI, and any fees associated with the issue of attorneys' fees. *See id.* ¶¶ 86-89. Finally, Mr. Knapton reduces by ten percent all

---

[6] Mr. Knapton states that the billing records submitted in support of the Motion are seven percent higher than the hours claimed by Plaintiffs in the Motion. *See id.* ¶¶ 80-81 (7,319.5 aggregate hours in the billing records and 6,836.8 hours claimed). Mr. Knapton offers no explanation for why the Court should use this fact to reduce the claimed hours as to do so would only serve to increase the discrepancy between the total number of hours contained in the billing records (7,319.5) and those claimed (6,354.1 after the 7% reduction).

fees incurred for what he deems unnecessary and inefficient "conferencing, team meetings, and training time." *Id.* ¶ 92 ("The team meetings and conferencing is really continuous and that may also be because of the 'pro bono' staff being so carefully monitored and trained."). Mr. Knapton then eliminates fees for "clerical work" (¶ 94), for research related to recusal issues (¶ 95), for work related to "screening" (¶ 96), for research of the California Professional Rules of Conduct (¶ 97), and for worked performed on behalf of Catholic Worker and Laraway (¶¶ 98-99). Mr. Knapton's alternate calculation produces a sum total of $1,160,175.[7]

## II. Legal Standard

The Ninth Circuit directs district courts to apply state law in determining not only the right to attorneys' fees, but also in the method of calculating the fees. *See Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). In California courts, the starting point for setting an award of attorneys' fees is the lodestar. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). The lodestar is calculated based on a "careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." *Id.* (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)). The reasonableness of an hourly rate is assessed by reference to the comparable legal services in the community generally. *See id.* Once a loadstar is calculated, it may be adjusted by the court based on factors including: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. *See id.* However, a court "is not *required* to include a fee enhancement to the basic lodestar figure." *Id.* at 1138 (emphasis in original).

## III. Discussion

### A. Reasonable Hourly Rates

As described above, the Court must begin its analysis by calculating a reasonable lodestar. To do so, the Court must determine reasonable hourly rates and then multiply those rates by the number of hours expended on the litigation. Plaintiffs provide the declaration of Barrett Litt, an attorney from the law firm Kaye, McLane, Bednarski & Litt, to demonstrate that the rates requested are reasonable. *See* Declaration of Barret Litt ("Litt Decl."), Docket No. 144-

---

[7] In a chart summarizing his calculations, Mr. Knapton also proposes a reduction of $39,325 at Plaintiffs' proposed rates for "pre-admission time" to account for hours billed by attorneys prior to their admission to the California bar. The only reference to these fees in his declaration, however, states that Heriberto Alverez and Mathew Hofer billed $36,740 prior to their admissions. *See id.* ¶ 63. Because the Court cannot glean how Mr. Knapton calculated the $39,325 he proposes be cut, the Court ignores this proposed reduction and thus reaches the $1,160,175 figure.

14, ¶ 2. As part of his methodology, Mr. Litt compares Plaintiffs' requested rates to rates approved by courts in other cases. *See generally id.*, Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks. Mr. Litt's Chart 1 shows that civil rights attorneys with 25 years or more experience have in many instances been awarded rates at or near $1,000 per hour. *See id.* Chart 1 also shows that attorneys who graduated from law school between 2000 and 2007 have in many instances been awarded rates at or near $750 per hour. *See id.* Finally, Chart 1 shows that attorneys who graduated between 2010 and 2015 have been awarded rates between $500 and $700 per hour. *See id.* Plaintiff provides similar information for the Court's review and comparison in a declaration from Richard Pearl, a solo practitioner. *See* Declaration of Richard Pearl ("Pearl Decl."), Docket No. 144-16.

The Court appreciates that the rates requested by Plaintiffs are within the range other courts have approved. Nonetheless, this Court has recently cited with approval the Real Rate Report as a benchmark for reasonable hourly rates in Los Angeles. *See, e.g.*, *Nisbet v. Am. Nat'l Red Cross, et al.*, Case No. 2:16-cv-7342-GW-(ASx), Docket No. 136, at 14, n.12 (C.D. Cal. June 7, 2018); *Harrison v. Archdiocese of Los Angeles, et al.*, Case No. 2:13-cv-8257-GW-(SSx), Docket No. 115, at 9-10 (C.D. Cal. May 7, 2015). The Court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district.[8]

The Court would thus accept Mr. Knapton's recommendation to recalculate Plaintiffs' lodestar by employing the Real Rate Report hourly rates. The Court rejects Mr. Knapton's suggestion that the Court should employ the first quartile rate for associate attorneys, however. Mr. Knapton suggests that doing so is appropriate because of the counsels' lack of experience. *See* Knapton Decl. ¶ 76 ("The time for the associates was mostly learning or training time or simply discovery work of the traditional kind."). The Court does not accept that Ryan Bradley, an attorney with 18 years of litigation experience, would have spent inordinate amount of his time in this case "mostly learning or training." *See id.* That Mr. Knapton would suggest that fees attributed to Mr. Bradley's work be calculated using the first quartile associate rate gives the Court pause with regard to any assumption underpinning Mr. Knapton's analysis and report.

The Court would thus calculate its own lodestar by using the median rates for both

---

[8] Other judicial officers within the Central District have cited with approval and utilized the Real Rate Report in calculating the appropriate award of attorney's fees. *See e.g. Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, Case No. CV09-5457-PSG-(JCx), 2015 WL 12645755, at *14, 17 n. 5 (C.D. Cal. Nov. 11, 2015).

partners and associates. Because the Plaintiffs' counsel, with the exception of M&F, are public interest law firms, the partner and associate labels are not necessarily helpful. To determine which rate applies to each attorney, the Court would use ten years of experience as a demarcation point. In other words, all attorneys with more than 10 years of experience will be treated as "partners" and all those with less than 10 years of experience will be treated as "associates."

The Court's revised calculations are summarized in the following chart:

| Firm | Attorney | Years of Experience | Claimed Rate/Hr. | Hours | Lodestar |
|---|---|---|---|---|---|
| WCLP | Rothschild | 43 | $545 | 38.2 | $20,819 |
| | Newman | 41 | $545 | 1005 | $547,725 |
| | Dozier | 12 | $545 | 327.2 | $178,324 |
| | Menjivar | 5 | $410 | 97 | $39,770 |
| PC | Richardson | 29 | $545 | 357.2 | $194,674 |
| | Sharma | 11 | $545 | 43 | $23,435 |
| | Hartz | 6 | $410 | 154 | $63,140 |
| LAFLA | Arias | 32 | $545 | 282.5 | $153,963 |
| | Schultz | 25 | $545 | 22.6 | $12,317 |
| | Bradley | 18 | $545 | 150.6 | $82,077 |
| | Clark | 14 | $545 | 439.9 | $239,746 |
| | Menjivar | 5 | $410 | 668.7 | $274,167 |
| DRLC | Pearlman | 36 | $545 | 32.1 | $17,495 |
| | Rivera | 12 | $545 | 331.4 | $180,613 |
| | Janssen | 8 | $410 | 71.1 | $29,151 |
| | Diaz | 6 | $410 | 70.3 | $28,823 |
| M&F | Barquist | 40 | $545 | 425.4 | $231,843 |
| | Gates | 22 | $545 | 231.8 | $126,331 |
| | Malloy | 11 | $545 | 417.8 | $227,701 |
| | Alvarez | 3 | $410 | 751.6 | $308,156 |
| | Hofer | 3 | $410 | 601.3 | $246,533 |
| | Lopez | Paralegal | $325 | 318.1 | $103,383 |
| | | | | Total: 6,836.8 | Total: $3,330,184 |

B. Reductions for Procedural and Substantive Losses

The Court cautioned Plaintiffs that because they were not prevailing parties procedurally or substantively as to all of the matters litigated in this case, the Court expected to see sufficient delineation not only as to hours expended but also as to the activities engaged in by counsel. *See* Attorneys' Fee Order at 18, n. 7. The billing records provided by Plaintiffs indicate that approximately 25 percent of billings occurred prior to the lawsuit's filing and that approximately

8

10 percent of billings can be attributed to the PI. *See* Knapton Decl. at 35 ($1,255,994 and $512,803 at requested rates, respectively).[9]

Under California law a court may award fees for pre-complaint activity in Section 1021.5 cases. *See Hogar v. Cmty. Dev. Comm'n of City of Escondido*, 157 Cal. App. 4th 1358, 1370 (2007). However, "when a successful litigant seeks to recover pre-complaint litigation expenses, the litigant will, as a practical matter, bear a heavier burden of demonstrating how that activity contributed to the success of the litigation." *Id.* Here, Plaintiffs argue that the pre-complaint activity of counsel consisted of approximately a year of settlement discussions after Plaintiffs sent a demand letter as well as research related to the filing of the Complaint. *See* Reply in Support of Motion ("Reply"), Docket No. 149, at 8. The Court would not find based on that justification that Plaintiffs have carried their heavy burden to justify compensation for that work. *See Hogar*, 157 Cal. App. 4th at 1370.

Additionally, in finding that Plaintiffs are entitled to fees as the prevailing party, the Court noted and cautioned Plaintiffs that in the Court's view they they did not prevail procedurally or substantively in all matters, most notably their attempts to obtain a PI in this case. *See* Attorneys' Fee Order at 18, n.7; *see also* PI Tentative Ruling. While the Court never made final its tentative ruling so as to permit the parties to negotiate a resolution in this case, the Court had every intention of denying Plaintiff's request for a PI. *See id.* The Court would thus reduce Plaintiff's award by a percentage amount commensurate with the amount of time Plaintiffs' counsel spent on that aspect of this litigation.

Defendants raise other aspects of this litigation that they deem do not justify an award of fees, including Plaintiffs' research of recusal issues and the California Professional Rules of Conduct. *See* Opp'n at 12-13. Based on the description of that work provided by Plaintiffs, the Court would find that it was largely reasonable in light of the litigation posture Defendants took (*see* Reply 13-14), with the exception as to the issue of the number of attorneys as discussed below. Accordingly, the Court would only reduce its recalculated total fees figure by 25 percent for pre-complaint activity and by 10 percent for work related to the PI, but with a further reduction based upon the number of attorneys discussed *infra*.

The Court thus reaches a lodestar of $2,164,620.[10]

---

[9] It is unclear whether any party attempted to distinguish efforts which were made solely for the federal causes of action (for which no attorney's fees can be awarded), as opposed to work performed pursuant to the California Government Code § 11135 claim.

9

### C. Multiplier

Plaintiffs seek a 1.5 multiplier for counsels' efforts. *See* Motion at 14. "The award of a multiplier is in the end a discretionary matter largely left to the trial court." *Hogar*, 157 Cal. App. 4th at 1371. Counsel should be awarded a fully compensatory fee where a plaintiff has obtained excellent results, but a court is never required to award a multiplier. *See id.* Here, Plaintiffs argue that the contingency nature of this litigation, coupled with the fact that the fees awarded will inure not to counsel but instead for nonprofit organizations' purposes, justify application of a 1.5 multiplier. *See* Reply at 21. The Court does not believe that in this case those justifications warrant additional award and would exercise its discretion to elect not to employ a multiplier in this case (except that the Court will apply a negative multiplier based on the number of attorneys involved).

### D. Number of Attorneys

This Court is well aware of and appreciates the fact that there are cases which raise difficult issues of fact and/or law which require the participation of multiple attorneys on one side and/or the other. *See e.g. Davis v. City of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. (1992). However, Plaintiffs have submitted no credible explanation as to why this lawsuit required or deserved the 21 attorneys whose work they now seek to have reimbursed herein, not the mention the many other attorneys who they claimed also participated in the lawsuit but for whom they do not seek recovery. This case was not particularly complex, either factually or in terms of the subject matter or applicable law. In the major portion of the case that was actually litigated before the Court, the Plaintiffs were not successful in obtaining the preliminary injunctive relief which they had sought. The matter did not go to trial. The case was ultimately dismissed when Plaintiffs deemed that the changes that the County had unilaterally made were sufficient for their purposes.

To be blunt, the Court finds the number of attorneys involved on the Plaintiffs' side to be rather shocking.[11] The Court will reduce the lodestar figure by 20%.

### E. Costs

Plaintiffs seek costs in the amount of $79,192. *See* Motion at 16. Mr. Knapton states that

---

[10] The lodestar is calculated as $3,330,184 – (($3,330,184 x .25) + ($3,330,184 x .10))

[11] This Court currently has a number of cases where the factual *and* legal issues are many times more complex (*both* factually and legally, plus they involve much greater amounts of money/assets), and yet they are staffed by a faction of the number of attorneys as are involved on the Plaintiffs' side herein.

10

of that amount, $25,789 is claimed "for Lexis or Westlaw which is an overhead item for most firms, paid on an annual flat amount basis, not on the pro-forma per use basis submitted." Knapton Decl. ¶ 17. Stated differently, Mr. Knapton believes that these costs are unusual, *not* unreasonable. Accordingly, the Court would award those costs. Additionally, Mr. Knapton believes Plaintiffs' claim for $20,081 for data hosting charges is "both high and not well explained for these charges, given the relatively small amount of data." Knapton Decl. ¶ 18. The Court would find that Mr. Knapton's opinion with regard to that line item is not well explained and would award that cost as well. Accordingly, the Court would award Plaintiffs the claimed amount of $79,192 for costs.

### F. Summation

In sum, the Court would find that Plaintiffs are entitled to $1,731,696.00 in attorneys' fees. The Court reaches this figure by recalculating Plaintiffs' counsels' fees using the median rates from the Real Rate Report and reducing from that amount fees associated with pre-complaint activities and the never-obtained PI, and then reducing the lodestar figure by 20%. The Court would also award Plaintiffs $79,192 in costs. The Court would thus award a total of $1,810,888.00.

## IV. Conclusion

Based on the foregoing discussion, the Court would grant the Motion. Plaintiffs shall prepare and provide the Court with an order consistent with its ruling herein.